**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS DELONE EVANS, | ) | |
| | ) | |
| *Petitioner*, | ) | Case No. 2:22-cv-01713 |
| | ) | |
| v. | ) | District Judge Nora Barry Fischer |
| | ) | Magistrate Judge Kezia O. L. Taylor |
| ATTORNEY GENERAL JOSH | ) | |
| SHAPIRO, PENNSYLVANIA STATE | ) | |
| PROBATION AND PAROLE, | ) | |
| COMMONWEALTH OF | ) | |
| PENNSYLVANIA and | ) | |
| WASHINGTON COUNTY | ) | |
| DISTRICT ATTORNEY, | ) | |
| *Respondents.* | | |

**REPORT AND RECOMMENDATION**

## I.  **RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Petition for Writ of Habeas Corpus, ECF No. 4, be denied and that a certificate of appealability also be denied.

## II.  **REPORT**

Presently before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Carlos Delone Evans ("Petitioner") pursuant to 28 U.S.C. § 2254.  The Petition challenges Petitioner's judgment of sentence at two separate cases for one count each of possession with intent to deliver a controlled substance in violation of 35 P.S. § 780-113(a)(30).  Petitioner was convicted at both cases following a consolidated nonjury trial, and on January 7, 2019, the trial court imposed an aggregate sentence of thirty to sixty months of incarceration and a consecutive two-year term of probation.[1]

---

[1] It is noted that Petitioner was paroled from his term of incarceration prior to filing the Petition in this case, but it is unclear whether at the time he filed his Petition he was still on parole, already

A. <u>Relevant Factual Background and Procedural History</u>

The facts underlying Petitioner's conviction at CP-63-CR-816-2016, as related by the trial

court, are as follows:

> Regarding case 816-2016, police officer Nicholas Powell ("Powell") testified that the Washington County Drug Taskforce (WCDT) was conducting operations to investigate sales of contraband substances in the City of Washington. Pursuant to this effort, Powell used a [Confidential Informant ("CI")] to engage a controlled purchase of heroin from [Evans] on January 6, 2016. According to Powell, he and several other members of the WCDT, including Police Detective Michael Manfredi (Manfredi), determined that the CI would contact [Evans] by telephone to arrange a meeting for the purchase of heroin. Manfredi, a certified officer under the Wiretap Act who is permitted to engage consented recording by one party, testified that he filed a written request with the Washington County District Attorney to make telephonic and video recordings involving the CI and [Evans].

> Powell explained that prior to the controlled heroin purchase, he and Manfredi physically searched the CI to ensure that the CI had no controlled substances on his person. Further, Powell and Manfredi searched the CI's entire automobile, including areas that might be hidden compartments, to ensure that it did not contain any controlled substances. According to Powell, no one other than the CI was in the CI's car after the search. After the completed searches, the CI called [Evans] to arrange the purchase. [Manfredi recorded this call. He also listened to the conversation between the CI and Evans]. Evans did not answer the CI's first phone call, but did answer the CI's second call. In this conversation, Evans instructed the CI to meet at the Exxon gas station at the intersection of Murtland and Ridge Avenues in the City of Washington. To complete the expected transaction, the CI was provided $100 in marked bills in denomination of $20 and $10.

---

serving his probation, or had completed serving his term of probation. A federal court has jurisdiction to entertain a petition for writ of habeas corpus under § 2254 only if the petitioner was "in custody pursuant to the judgment of a State court" when the petition was filed. 28 U.S.C. § 2254(a). The United States Supreme Court has held that the "in custody" requirement is satisfied when, at the time he files the petition, the petitioner was incarcerated pursuant to the judgment of the state court that is under attack. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). The Third Circuit has also held that the jurisdictional "custody" requirement can be satisfied by restrictions other than physical confinement. *See Jones v. Cunningham*, 371 U.S. 236 (1963) (holding that a prisoner who had been placed on parole was still "in custody" under his unexpired sentence); *Barry v. Brower*, 864 F.2d 294, 296 (3d Cir. 1988) (finding that habeas jurisdiction continued "at least until the expiration of Barry's probationary term"). If Respondents can demonstrate through the filing of Objections that Petitioner was no longer "in custody" at the time he filed his Petition in this case then it is recommended that the Court dismiss the Petition for lack of jurisdiction.

According to Powell, the CI entered his car and drove to Exxon. Powell testified that he followed the CI in his vehicle to the Exxon station and stationed himself on Ridge Avenue approximately 50 yards away from the Exxon station. Manfredi testified that he too followed the CI from the time he entered his car until he arrived at the Exxon station. [Manfredi testified that he placed a video recording key fob on the dashboard of the CI's car and instructed the CI that it needed to be positioned in such a manner in order to record Evans' face. F or some unknown reason, the fob moved and never recorded the face of Evans, nor any hand movements during the transaction.] Manfredi positioned himself on Murtland Avenue directly across the street from the Exxon station, also about 50 yards from the CI's car. Manfredi testified the CI was always within his sight.

Powell and Manfredi testified that they both observed Evans walking north on Murtland toward the Exxon station, entering the gas station parking lot, approaching the CI's car, and then entering the car from the front passenger door. Manfredi testified that no other person entered the CI's car from the time he installed the key fob recorder other than the CI. Both [officers] testified very soon after [Evans] entered the car, the CI then drove himself and [Evans] south on Ridge Avenue from Exxon, turning west (right) onto Coremont Avenue, turning north onto Kennedy Avenue, and stopping at the intersection of Kennedy and Murtland Avenues. [Evans] then exited the CI's car.

The CI proceeded to a designated neutral location. Powell and Manfredi followed the CI to the neutral location without the CI leaving his [sic] sight and the CI did not stop until he reached the designated neutral location. Upon reaching the location, Powell and Manfredi exited their respective cars' and went to the CI's car. At that time, the CI presented Powell with 9 stamp bags of heroin and the bags were stamped "MVP" in green lettering. Manfredi recovered the recording key fob.

*Commonwealth v. Evans*, No. No. 451 WDA 2019 & No. 452 WDA 2019, 2020 WL 1079253, at

*1-2 (Pa. Super. Mar, 6, 2020) (quoting Trial Court Opinion, 3/13/19, at 2-4) (citations to the

record and footnotes omitted).

The facts underlying Petitioner's conviction at CP-63-CR-787-2016, as related by the trial

court, are as follows:

With respect to case number 787-2016, on January 8, 2016, Powell and several other officers, including [Evans'] state parole officer, drove to the [Evans'] apartment (375 Locust Avenue, Apartment 8, Washington, Pennsylvania) to arrest him for the distribution of heroin to the CI. [Evans] answered the knock on the door and the officers entered [Evans'] apartment to make the arrest, which took place in the apartment entryway. Powell testified that as the arrest was taking place

3

and [Evans] was being handcuffed, he conducted a protective sweep of the small apartment that consisted of a living room, kitchen, bathroom and one bedroom.

During the protective sweep, Powell noticed a gun holster inside a nightstand drawer while standing in the hallway leading to the bedroom. Powell testified that he was able to see into the bedroom because the bedroom door was open and that the nightstand drawers had clear panels, thereby allowing one to see inside. Knowing that the Defendant was a convicted felon and unable to legally possess a handgun, Powell determined that he should request a search warrant from the Court. Powell submitted an affidavit of probable cause in support of a search warrant request to the Court on January 8, 2016, which the Court granted. A search of the apartment was then conducted pursuant to the search warrant and contraband including controlled substances was located. [The contraband consisted of 350 stamp bags of heroin and 25 grams of crack cocaine located under the pillow on Evans' bed, a digital scale and 25 bags of heroin in the Evans' kitchen, a revolver holster and $1,400 in cash in the Evans' bedroom, 8 bricks of heroin and 1 ounce of crack not under the bed pillow.]

*Id.*, 2020 WL 1079253, at *2 (quoting Trial Court Opinion, 3/13/19, at 4) (citations to record and footnote omitted).

Petitioner filed an omnibus pretrial motion seeking *habeas corpus* relief and the suppression of evidence. *Id.*, at *2. The trial court held an evidentiary hearing on November 7, 2016, after which it denied the motion. *Id.* Following a consolidated non-jury trial, the court convicted Petitioner of one count of possession of a controlled substance at each docket number. *Id.* On January 7, 2019, the trial court imposed an aggregate sentence of thirty to sixty months of incarceration and a consecutive two-year probation term. *Id.* Petitioner appealed, and the Superior Court affirmed Petitioner's judgment of sentence on March 6, 2020. *Id.* Petitioner did not petition for allowance of appeal from the Pennsylvania Supreme Court.

On March 25, 2020, Petitioner filed a *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"). *See Commonwealth v. Evans*, No. 260 WDA 2021, 2022 WL 366985 (Pa. Super. Feb. 8, 2022). The court appointed counsel, who subsequently filed a motion to withdraw. *Id.*, at *1. New counsel was appointed, and that attorney also filed a motion to

withdraw along with a "no-merit" letter. *Id*. His PCRA petition was dismissed without a hearing on January 29, 2021, and the Superior Court affirmed the dismissal of the petition on February 8, 2022. *Id*.

**B. Federal Habeas Standards**

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), habeas relief is only available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

An application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011); *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

The majority of federal habeas claims need only be analyzed under § 2254(d)(1), which applies to questions of law and mixed questions of law and fact. In applying § 2254(d)(1), the federal habeas court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1). The phrase "clearly established," as the term is used in § 2254(d)(1), "refers to the

holdings, as opposed to the dicta, of the [United States Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 363, 412 (2000). Thus, "clearly established Federal law" is restricted to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, the federal habeas court must determine whether the state court's adjudication of the claim at issue was "contrary to" that law. *Williams*, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning). A state-court adjudication is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 405, 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Id.* at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives under § 2254(d)(1)'s "unreasonable application" clause.

A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. To satisfy his burden under this provision of AEDPA's standard of review, the petitioner must do more than convince the federal habeas court that the state court's decision was incorrect. He must show that it "was objectively unreasonable." *Id.* at 409. This means that the

6

petitioner must prove that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

As the Supreme Court has noted:

> …. It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer*, *supra*, at 75, 123 S. Ct. 1166.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Richter*, 562 U.S. at 102.

If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a *de novo* evaluation of the constitutional claim on the merits. *See Tucker v. Superintendent Graterford SCI*, 677 F. App'x 768, 776 (3d Cir. 2017) (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must then resolve the claim without the deference AEDPA otherwise requires."). The Court of Appeals for the Third Circuit has explained that,

> [w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient. That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," *Williams*, 529 U.S. at 389, 120 S.Ct. 1495. *See also Horn v. Banks*, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA

standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"). Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred. *See Lafler v. Cooper*, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

*Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013). "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263, 281 (3d Cir. 2016) (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Woods*, 558 U.S. at 301 (quoting *Collins*, 546 U.S. at 341-42).

If the state court did not adjudicate a claim on the merits, the federal habeas court must determine whether that was because the petitioner procedurally defaulted it.  *See*, *e.g.*, *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002).  If the claim is not defaulted, or if the petitioner has established grounds to excuse his default, the standard of review at § 2254(d) does not apply and the habeas court reviews the claim *de novo*.  *See*, *e.g.*, *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  However, in all cases and regardless of whether the standard of review at § 2254(d) applies, the state court's factual determinations are presumed to be correct under § 2254(e)(1) unless the petitioner rebuts that presumption by clear and convincing evidence.  *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing *Appel*, 250 F.3d at 210).

## C.  <u>Discussion</u>

The Court has identified five claims raised in the Petition.[2]  First, Petitioner claims that there was a violation of Pa. R. Crim. P. 600 because he was not tried within 365 days, and second, he claims that the Commonwealth did not comply with disclosure provisions regarding mandatory discovery, Pa. R. Crim. P. 573(B)(1)(g), and Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("the Wiretap Act"), 18 Pa. C.S.A. § 5701, *et seq*.  He also appears to argue ineffective assistance of counsel in relation to each of these two claims, although it is unclear whether he specifically raises claims of ineffective assistance of counsel.  Finally, Petitioner's fifth claim appears to be that Officer Powell swore to erroneous information in his affidavit of probable cause, which misled the court to issue the warrant.

---

[2] The Petition consists of three separate individual petitions filed on the standard form.  *See* ECF No. 4.  The arguments presented in each simply appear to be variations of the same claims.

1.  **Petitioner's claims based on violations of state law are not cognizable on federal habeas review.**

To the extent Petitioner is alleging violations of the Pennsylvania Rules of Criminal Procedure, discovery rules, and/or the Wiretap Act, his claims should be denied because these are alleged violations of Pennsylvania law and "federal habeas relief does not lie for errors of state law."[3] *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation omitted).  In conducting habeas review for a state prisoner, this Court is limited to deciding whether the prisoner's conviction violated the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 2254(a).  Petitioner's claims solely premised on violations of state law are simply not cognizable in these proceedings.  Furthermore, even if Petitioner is arguing that the state court somehow misapplied its own law when it addressed these claims,[4] it is well established that such misapplication "does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Taylor v. Horn*, 504 F.3d 416, 448 (3d Cir. 2007); *see also id.* ("Even

---

[3] It is noted that Petitioner raised a Rule 600 violation claim in his PCRA petition, and on appeal thereof, in the context of an ineffective assistance of counsel claim, but he did not allege a violation of his right to a speedy trial under the Sixth Amendment to the United States Constitution.  Rule 600 and the Sixth Amendment are not co-extensive in regard to the United States Constitution's guarantee of the right to a speedy and public trial.  *See Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991) (Pennsylvania's speedy trial rule "does not define the contours of the federal constitutional right to a speedy trial").  While Rule 600 sets a time limit, with various rules for determining how to calculate and assess delays, the Sixth Amendment has no such time limits or rules.  Therefore, the Court does not find a Rule 600 violation claim to be the "substantial equivalent" of a Sixth Amendment claim for purposes of satisfying the federal habeas exhaustion requirement.  *See Picard v. Connor*, 404 U.S. 270, 277-78 (1971) ("[I]n order to satisfy exhaustion, a state habeas petitioner must present the "substantial equivalent" of his federal claim to the state courts in order to give the state courts "an opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.").

[4] While Petitioner raises some of the same state law violation claims he presented to the state courts on direct appeal, PCRA and PCRA appeal, he presents no actual arguments in his Petition as to why he thinks the state courts were incorrect in finding that no violations had occurred or that the state court's denial of such claims somehow amounted to a federal constitutional violation.

assuming the state court failed to follow the law of Pennsylvania, in this federal habeas case, we are limited to deciding whether [the petitioner's] conviction and sentence violated the Constitution, laws, or treaties of the United States.") (internal quotation omitted); *Kontakis v. Beyer*, 19 F.3d 110, 117 n.12 (3d Cir. 1994). Accordingly, these claims should be denied.

   2.   <u>**Petitioner's ineffective assistance of counsel claims do not merit habeas relief.**</u>

   To the extent Petitioner is raising two claims of ineffective assistance of counsel in relation to his trial counsel's failure to file a motion to dismiss Petitioner's case under Pa. R. Crim. P. 600 and appellate counsel's failure to adequately argue on direct appeal that the Commonwealth failed to disclose authority by which it conducted wiretapping in his case, as required by Pa. R. Crim. P. 573(B)(1)(g), the Court notes that these claims were raised by Petitioner in his PCRA petition and on appeal therefrom, and both were denied on their merits. Therefore, this Court's review of them is very limited. It is not for this Court to decide whether the state court decision was right or wrong. Rather, under AEDPA's standard of review, as codified in relevant part at 28 U.S.C. § 2254(d)(1), it is Petitioner's burden to show that the state court's adjudication was "contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or, as codified in relevant part at 28 U.S.C. § 2254(d)(2), was an "unreasonable determination of the facts in light of the evidence presented."

   Here, the "clearly established Federal law" for Petitioner's claims of ineffective assistance of counsel is that which is set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. *Id*. at 685-87.

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013).

Under *Strickland*, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Richter*, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689). Counsel cannot be deemed ineffective for failing to raise a meritless claim. *See, e.g., Preston v. Sup't Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018)

*Strickland* also requires that Petitioner demonstrate that he was prejudiced by counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The Supreme Court in *Strickland* noted that although it had discussed the performance component of an ineffectiveness claim before the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. 466 U.S. at 697. If it is more efficient to dispose of an ineffectiveness claim because the petitioner failed to meet his burden of showing prejudice, a court need address only that prong of *Strickland*. *Id*.

12

To be entitled to relief on his exhausted claims of ineffective assistance of counsel, Petitioner must first overcome AEDPA deference by demonstrating that the state court's decision was either "contrary to" or an "unreasonable application" of *Strickland*. Only then could this Court proceed to a *de novo* review of his constitutional claims. *See Tucker v. Superintendent Graterford SCI*, 677 F. App'x 768, 776 (3d Cir. 2017) (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)).

The relevant portion of the Superior Court's opinion as to Petitioner's ineffective assistance of counsel claims is as follows:

> Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:
>
> > [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction and sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." . . . [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.
>
> *Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citation omitted).
>
> Appellant first contends that his trial counsel was ineffective for not filing a motion to dismiss Appellant's case based on a violation of Pa.R.Crim.P. 600(A)(2)(a) ("Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed."). In its Rule 907 notice, the PCRA court explained that 1,012 days passed between the filing of the criminal complaints against Appellant and his non-jury trial. *See* Order, 12/22/20, at 7. However, the court concluded that 744 of those

days are excludable for Rule 600 purposes. *See id*.; *see also* Pa.R.Crim.P. 600(c) (setting forth the requirements for computing time under the rule and indicating, generally, that delay caused by the Commonwealth's failure to exercise due diligence shall be included in the computation, and delays caused by the defendant shall be excluded from the computation). The PCRA court listed the excludable delays and determined that, after omitting that time from the Rule 600 computation, Appellant was brought to trial within 268 days, thereby satisfying the 365-day requirement of Rule 600(c). *See id*. at 7-8. Accordingly, the court found that Appellant's trial counsel did not act ineffectively by not pursuing a Rule 600 motion.

On appeal, Appellant seems to only take issue with the court's excluding the time between May 27, 2016, and November 14, 2016, and the time between November 22, 2016, and September 7, 2017. First, the court excluded 171 days between May 27, 2016, and November 14, 2016, because that time was used to dispose of Appellant's omnibus pretrial motion asserting habeas and suppression issues. This Court has previously found that time spent litigating a defendant's pretrial motions is excludable time, unless the Commonwealth fails to exercise due diligence in responding to the motion. *Commonwealth v. Cook*, 865 A.2d 869, 875-76 (Pa. Super. 2004) (finding excludable a 72-day delay required to litigate Cook's pretrial motion). Appellant does not claim that the Commonwealth failed to act diligently in regard to his pretrial motion, and the record does not indicate any delays caused by the Commonwealth in this regard. Accordingly, we discern no error in the court's exclusion of this 171-day delay.

Second, the PCRA court excluded administrative delay, and delay caused by Appellant, that occurred between November 22, 2016, and September 7, 2017. The court explained that "[o]n November 22, 2016, the Commonwealth presented a motion to set a jury date because it was ready to proceed to trial." Order at 7 ¶ 2. The court noted that before all jury trials, it schedules a pre-trial conference, and then conducts the jury trial in the same month as the pre-trial conference, unless otherwise requested by the parties. *See id*. at 7 n.5. In this case, the court's schedule allowed for it to hold a pre-trial conference for January 5, 2017. However, Appellant filed a motion for a continuance of that pre-trial conference because he sought to change counsel. *Id*. Thereafter, Appellant's new attorney requested five more continuances of the pre-trial conference. *Id*. Then, when the conference was finally conducted on September 7, 2017, Appellant indicated he "no longer wanted a jury trial" but, instead, he wished to proceed to a non-jury trial. *Id*. Thus, the court excluded the time between November 22, 2016, and September 7, 2017, as administrative delay and delay caused by Appellant.

Herein, Appellant seemingly argues that the PCRA court's excluding the administrative delay from November 22, 2016, to January 5, 2017, was impermissible because the court failed to cite any legal authority to support that decision. *See* Appellant's Brief at 2 ("[A]ll that . . . [A]ppellant wants to know is

if this 'administrative reasoning' is lawful and[,] if so[,] for the court to explain the legality of it[.]").

Appellant's argument is meritless. Our Supreme Court has stated that "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600[,]" and "that periods of judicial delay are excludible [sic] from calculations under the rule . . . ." *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017) (internal citations omitted). Likewise, this Court has declared that "delays caused by administrative decisions of the court, decisions over which the Commonwealth has no control, are generally excused." *Commonwealth v. Riley*, 19 A.3d 1146, 1149 (Pa. Super. 2011).

We recognize that recently, in *Commonwealth v. Harth*, 252 A.3d 600 (Pa. 2021), our Supreme Court held

> that, in ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion. Otherwise, the due diligence component of Rule 600 "would have little, if any, meaningful import." *Mills*, 162 A.3d at 327 (Wecht, J., concurring).

*Id*. at 618. Here, however, Appellant makes no argument that the Commonwealth failed to exercise due diligence during the at-issue delay. Indeed, the record indicates otherwise, as the Commonwealth filed the November 22, 2016 motion to set a trial date. Thus, the delay between that date and January 5, 2017 — which was the earliest date the court could hold a pre-trial conference due to its busy schedule — was administrative delay that is not attributable to the Commonwealth. Therefore, Appellant's trial counsel did not act ineffectively by not seeking to dismiss Appellant's case for a Rule 600 violation.

Next, Appellant argues that his appellate counsel acted ineffectively by not properly raising a claim, on direct appeal, that the Commonwealth violated Pa.R.Crim.P. 573(b)(1)(g) by failing to produce the authority by which it was permitted to conduct wiretapping of Appellant during the investigation of his cases. By way of background, Appellant's trial counsel made an oral motion, at the close of trial, to suppress evidence based on the Commonwealth's failure to produce written verification that wiretapping conducted in this case was authorized. *See* Trial Court Opinion, 3/13/19, at 1.

> More specifically, [Appellant] claimed that the recorded telephone conversation between [the] confidential informant (CI) and himself on January 6, 2016, as well as a subsequent audio/video recording

in the CI's automobile on the same date, at case number 816-2016[,]
should be suppressed because the Commonwealth did not produce
written verification that the recordings were authorized by the
District Attorney pursuant to the Wiretapping and Electronic
Surveillance Control Act (Wiretapping Act).     In addition,
[Appellant] argued that the evidence seized from his apartment
regarding the search at case number 787-2016 should not be
considered by the [c]ourt since it was fruit of the poisonous tree[,
where] the search of [Appellant's] apartment took place after the
video was recorded, and it did not identify [Appellant], nor does it
show any hand-to-hand transaction between [Appellant] and the CI.

*Id*. at 1-2.

On direct appeal, Appellant's counsel raised whether "the trial court err[ed]
in not granting the oral motion to reconsider the Motion to Suppress when new
evidence, adduced through trial testimony, revealed that mandatory discovery
disclosure concerning the authority for a wiretap was not produced to [Appellant's]
counsel[.]"  *Evans*, No. 451 WDA 2019, unpublished memorandum at *3.  This
Court thoroughly addressed this issue and concluded it was meritless.  *Id*. at *4-7.

Appellant now seemingly contends that his appellate counsel should have
raised in the principal brief to this Court — rather than in the reply brief — that the
trial court should have conducted a hearing on the wiretapping issue before denying
it.     However, given this Court's determination that the wiretapping claim is
meritless, Appellant has not demonstrated that he was prejudiced by counsel's
purported error in this regard.  Accordingly, his second ineffectiveness claim fails.

*Commonwealth v. Evans*, 2022 WL 366985 at *2-4 (Pa. Super. Feb. 8, 2022) (footnote omitted).

With respect to the first question in the analysis, whether the state court's decision was

"contrary to" clearly-established Federal law, the Supreme Court has stated that "a run-of-the-mill

state court decision applying the correct legal rule from our cases to the facts of a prisoner's case

would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  *Williams*, 529 U.S. at 406.

Such is the case here.  The state court's decision, as set forth above, was not "contrary to"

*Strickland*.  The Superior Court stated the correct standard and there is no indication that it applied

a different standard to Petitioner's claims than that set forth in *Strickland*.  While the Superior

Court articulated the ineffective assistance of counsel standard in three parts, and federal courts

16

set it out in two, the Third Circuit has made it clear that this test does not contradict *Strickland* since the legal evaluation is the same. *See Werts v. Vaughn*, 228 F.3d 178, 202-04 (3d Cir. 200) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted *Strickland* and thus was not 'contrary to' established Supreme Court precedent.") Therefore, the state court's decision was not "contrary to" clearly-established Federal law and the question now becomes whether its decision was an objectively "unreasonable application" of that law.

Under the "unreasonable application" provision of § 2254(d)(1), the appropriate inquiry is whether the state court's application of *Strickland* to the petitioner's ineffectiveness claim was objectively unreasonable, *i.e.*, the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*. To satisfy his burden under § 2254(d)(1), a petitioner must do more than convince the court that the state court's decision denying a claim was incorrect. *Dennis v. Sect'y, Pennsylvania Dept. of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016). He must show that it "'was objectively unreasonable.'" *Id*. (quoting *Williams*, 529 U.S. at 409). This requires that he establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Under the deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, there is no basis for this Court to conclude that the state court's adjudication of Petitioner's ineffectiveness claims was an unreasonable application of *Strickland*. The Superior Court found that trial counsel did not act deficiently by failing to file to file a motion to dismiss based on an alleged Rule 600 violation because no such violation had occurred, and it also found that Petitioner could not show prejudice as to any purported error by his appellate counsel because

his underlying wiretapping claim was meritless. These were reasonable applications of *Strickland*'s standard because it is well established that "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Therefore, the state court's decision also withstands review under the second prong of § 2254(d)(1).

The undersigned notes that the standard of review set forth at § 2254(d)(2) is not applicable here because that section applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim" *Burt*, 571 U.S. at 18, and the Superior Court's decision here was not premised upon any findings of fact made by it or the PCRA court. However, to the extent that the section arguably applies to this Court's review of Petitioner's claims, it is recommended that the Court find that Petitioner has not overcome the burden imposed by it. That is, he has not demonstrated that the Superior Court's decision was based upon an unreasonable determination of the facts.

Because Petitioner is not able to satisfy the requirements of § 2254(d), he is not able to overcome the deference owed to the state court's decision pursuant to AEDPA. Accordingly, these claims should be denied.

### 3. **Petitioner's claim challenging the affidavit of probable cause is procedurally defaulted but nevertheless fails to provide him with a basis for habeas relief.**

Petitioner claims that Officer Powell intentionally omitted pertinent information from the affidavit of probable cause, which misled the court to issue the warrant. He claims that Officer Powell referred to a video recording to corroborate one of the drug transactions made by the confidential informant, but he neglected to inform the court that the actual hand-to-hand transaction was not recorded. Petitioner raised this claim on direct appeal, but the Superior Court found that Petitioner had waived any issue regarding the sufficiency of the affidavit of probable

cause because he failed to raise it in his omnibus pretrial motion to suppress. *Evans*, 2020 WL 1079253 at *9.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). In order to exhaust, a petitioner must invoke "one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. It is Petitioner's burden to show that he has exhausted his available state remedies. *Coady v. Vaughn*, 251 F.3d 480, 488 (3d Cir. 2001).

Petitioner did not exhaust this claim in the state courts and the claim is procedurally defaulted. *See McCandless v. Vaughn*, 172 F.3d 255, 261-62 (3d Cir. 1999); *see also Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012). The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. Federal courts may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Id*. In this case, Petitioner has failed to demonstrate any basis to excuse the default of his claim.

Nevertheless, errors in an affidavit of probable cause as alleged by Petitioner cannot serve as a basis for setting aside a valid conviction in a federal habeas action. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that

19

actually led to the petitioner's conviction; . . . . Federal habeas power is 'limited . . . to a determination of whether there has been an improper detention by virtue of the state court judgment.") (internal citations omitted). It is well settled law "that an illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952) and *Ker v. Illinois*, 119 U.S. 436 (1886)); *see also United States v. Farnsworth*, 302 F. App'x 110, 112-13 (3d Cir. 2008) ("Equally unavailing is Farnsworth's claim that the District Court lacked jurisdiction due to an alleged defect in the arrest warrant that issued after his indictment. Even assuming the warrant was defective, we see no reason to retreat from the established rule that illegal arrest or detention does not void a subsequent conviction.") (internal quotation omitted). In other words, even if there were issues with regard to probable cause at the time of Petitioner's arrest, it would not provide Petitioner with a basis for federal habeas relief from his subsequent conviction.

Moreover, even if Petitioner had challenged the sufficiency of the affidavit of probable cause in his omnibus pretrial motion to suppress, any claim challenging the trial court's decision to deny the motion based upon a lack of probable cause is not a claim that is cognizable in a federal habeas action. In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that a federal court may not grant a state prisoner habeas relief on a claim that evidence in an unconstitutional search or seizure was introduced at his trial if the State had already provided an "opportunity for full and fair litigation" of the claim, explaining:

> [T]he additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs. To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment. There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence

at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant. The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that law enforcement authorities would fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal. Even if one rationally could assume that some additional incremental deterrent effect would be presented in isolated cases, the resulting advance of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice.

In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 493-94 (footnotes and internal citations omitted). *See also Deputy v. Taylor*, 19 F.3d 1485, 1490-91 (3d Cir. 1994) (rejecting a Fourth Amendment claim because the petitioner had a full and fair opportunity to litigate it in the state court, and noting that under *Stone*, "[e]ven otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them."). It cannot be disputed that Petitioner had a full and fair opportunity to litigate his claim in the state court even if he did not do so. For all these reasons, this claim should be denied.

### D.  Certificate of Appealability

AEDPA codified standards governing issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by the State court[.]"  28 U.S.C. § 2253(c)(1)(A). It also provides

that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying this standard here, Petitioner has not made the requisite showing. Accordingly, a certificate of appealability should be denied.

## III.    <u>CONCLUSION</u>

For the above mentioned reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus, ECF No. 4, be denied and that a certificate of appealability also be denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated:  October 28, 2025.

/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge

Cc:   Carlos Delone Evans
2615 Shadeland Ave.
Pittsburgh, PA  15212

Counsel for Respondents
(Via CM/ECF electronic mail)